**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 12-cv-02935-RM

JANET K. CRABB

    Plaintiff,

v.

CAROLYN COLVIN, Commissioner, Social Security Administration,

    Defendant.

---

**ORDER**

---

## I.  INTRODUCTION

Plaintiff Janet K. Crabb (plaintiff) first applied for disability insurance benefits (DIB) on September 15, 2009 and supplemental security income (SSI) on August 19, 2010, alleging disability due to scoliosis, depression, glaucoma, and back pain for a period beginning May 1, 2009. (ECF Nos. 7-2, p.22; and 7-6, pp.143-44, 173). Her claims were denied on April 14, 2010, whereupon she filed a timely written request for a hearing, which was granted. (ECF No.7-2, pp. 1, 22; ECF No.7-4, pp.68-70). A hearing was held before an Administrative Law Judge (ALJ) on March 17, 2011, where plaintiff appeared and was represented. (ECF No. 7-2, pp 38-56).

On June 9, 2011, the ALJ found plaintiff "not disabled" and denied her application. (ECF No. 7-2, pp.22-30). This denial became the Commissioner of Social Security's (Commissioner) final decision when the Appeals Council declined to review the ALJ's decision on September 5, 2012. (ECF No.7-2, pp. 1-3). Plaintiff now seeks review of that final decision.

## II     BACKGROUND

A.     **General and Medical:**

Plaintiff was born on April 4, 1954. (ECF No.7-2, p.40). At the date of her alleged onset of disability, plaintiff was 55 years old, and had completed 12th grade but did not graduate or complete her GED. *Id.* In her relevant past, plaintiff worked as a mold machine operator and electronics assembler. (ECF No.7-2, pp.40-42; ECF No. 7-6, pp.55-63). Plaintiff has a long-standing diagnosis of scoliosis. (ECF No. 7). Plaintiff testified she was laid off from her work as a mold machine operator due to lack of work and her limitations. ECF No. 7-2, p.42). She applied for and received unemployment insurance benefits for over a year after her alleged onset of disability. (ECF No.7-2, pp. 27, 43).

Prior to the plaintiff's alleged onset of disability in May 1, 2009, she was diagnosed with mild to severe lumbar scoliosis with multilevel degenerative changes of the spine. (See e.g., ECF No.7-7, p. 234). A bone density assessment radiograph performed in December 29, 2008, found osteopenia with stable to worsening changes in plaintiff's hip, forearm and spine and recommended weight bearing exercise, supplemental calcium and Vitamin D3 and minimizing the risk of falls to reduce the risk of fracture. (ECF No.7-7, p.265).

Nonetheless plaintiff worked as a mold machine operator from April 2008, through May 2009, during which she ran the mold machine, had to climb on a ladder hourly to fill the hopper, packaged items and sealed filled boxes which she carried to a shipping area. (ECF No.7-6, pp.158-59). In doing so, plaintiff reported she frequently lifted 25 pounds. (ECF No. 7-6, p.160).

Complaining of increasing back pain, plaintiff was referred for X-ray in early 2009. (ECF No. 7-7, p.234). Her X-ray performed on February 20, 2009, demonstrated moderate to severe scoliosis with grade 1 L5-S1 spondylolisthesis with multilevel degenerative changes of her spine. *Id.* Diagnostic radiography on June 5, 2009, found moderate to severe complex scoliosis of the thoracic and lumbar

spine.  (ECF No. 7-7, p.271).  On September 28, 2009, Dr. Feiler examined plaintiff in consultation with Dr. Lopez.  (ECF 7-7, pp.274-75).  Dr. Feiler noted plaintiff complained of lower back pain that was worse with coughing or sneezing and sometimes radiated down her left lower extremity as far as her foot.  (ECF No. 7-7, p.274).  Dr. Feiler ordered an MRI to better evaluate plaintiff's spine.  *Id.*

The MRI performed on January 13, 2010, found severe scoliosis of her thoracolumbar spine, mild to moderate disc desiccation in her lower thoracic and upper lumbar spine, severe disc desiccation at L4-5 level and a compression of the exiting left L5 nerve root.  (ECF No.7-7, p.278).  Dr. Feiler on January 25, 2010, reviewed the MRI interpretation and recommended that plaintiff lose weight, do her back exercises and return in six weeks for re-evaluation.  (ECF No. 7-7, p.277).

Several months later, on April 10, 2010, Dr. Hodge examined plaintiff in consultation.  (ECF No. 7-7, pp.279-284).  Dr. Hodge noted that plaintiff reported: she could fold laundry as long as she was sitting down; that she could do dishes if she was up and down; that while she can grocery shop, she needed help loading and unloading the groceries; she cannot stand long enough to cook family meals; she can dress herself but sometimes needs help putting on her socks or shoes; she showers because she cannot sit in the tub and drives only 50% of what she used to because she now has trouble turning her head to look over her shoulder.  (ECF No. 7-7, p.280).  Dr. Hodge (in relevant part), stated that plaintiff gave a full effort in the examination, and diagnosed her with moderate kyphoscoliosis (outward and lateral curvature of spine), and a lumbosacral strain.  (ECF No. 7-7, p.283).  He opined that based on his examination plaintiff could: stand for four hours; sit without restriction; walk for four hours; squat but not bend; lift 20 pounds and carry 10 pounds; could not crawl; could travel independently and do daily activities and repetitive motions.  (ECF No. 7-7, 283-84).  He opined that plaintiff "has depression without any suicidal ideation" and was currently being treated for that condition.  (ECF No. 7-7, p.284).

Plaintiff next saw Dr. Feiler on November 2010, where he noted that taking calcium is not enough, and recommended: that Dr. Lopez prescribe medication for her bone loss; that plaintiff be referred to a dietician for weight loss assistance given her physical inability to exercise; and discouraged plaintiff from attempting the back exercises she had been given, instead recommending abdominal tightening while lying flat and "maybe" raising one leg. (ECF No. 7-8, p.356) Dr. Feiler recommended plaintiff return for re-evaluation in two months. *Id.*

When plaintiff returned in January 2011, Dr. Feiler noted a marked deterioration in her right hip with plaintiff having difficulty walking. (ECF No.7-8, p.393). Plaintiff reported that she had pain even when in bed which resulted in interrupted sleep and had trouble getting into the car or getting up from a chair. *Id.* Dr. Feiler noted plaintiff: was taking 800 mg of Ibuprofen three times daily; that she had lost some weight; had a "markedly positive Trendelenburg sign" which he interpreted as indicating that plaintiff needed to be referred to be considered for a total hip replacement; and cautioned plaintiff in the interim, to use her cane regularly. *Id.*

**B.    ALJ's Decision:**

The ALJ found that: plaintiff met the insured status requirements through December 31, 2013; had not engaged in substantial gainful activity since May 1, 2009, the alleged onset date of her disability; had collected unemployment through October 2010; and had severe impairments of disorder of the back, right hip problems and obesity. (ECF No.7-2, p. 24). The ALJ stated that he had considered sections 1.00 and 9.00 concerning musculoskeletal and endocrine system impairments and found that plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment. (ECF No.7-2, pp.24-25).

The ALJ found that plaintiff had the residual functional capacity (RFC), to perform light work with occasional bending squatting and kneeling with no climbing of ladders or scaffolds. (ECF No. 7-2,

p.25-29). The ALJ in his discussion noted various statements that he believed did not reflect favorably on plaintiff's credibility. (ECF No.7-2, pp.25-27). The ALJ found that plaintiff was capable of performing her past relevant work as a plastic mold machine operator and electronics assembler which he determined did not require the performance of work-related activities precluded by the claimant's RFC. (ECF No.7-2, p.29). The ALJ concluded that plaintiff had not been under a disability from May 1, 2009 through June 9, 2011, the date of his decision. (ECF No. 7-2, p.30).

### III.   DISCUSSION

#### A.   Standard of Review:

An individual seeking disability benefits bears the burden of proving a disability. 42 U.S.C. § 423(d)(5). The Act defines "disabled" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §423(d)(1)(A). To meet this burden, a plaintiff must provide medical evidence of an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques and of the severity of that impairment during the time of his/her alleged disability. 42 U.S.C. § 423(d)(3); 20 C.F.R. §§404.1512(b) and 416.912(b). A plaintiff is disabled only if his/her impairments are of such severity that s/he is not only unable to do his/her previous work but cannot, considering his/her age, education, and work experience, engage in any other kind of substantial gainful work in the national economy. 42 U.S.C. §423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§404.1520 and 416.920; *Williams v. Bowen,* 844 F.2d 748, 750-51 (10th Cir. 1988). In reviewing a decision of the Commissioner, the court is limited to determining whether the

Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *Grogan v. Barnhart,* 399 F.3d 1257, 1261-62 (10th Cir. 2005). The court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir. 1994).

**B.     Issues:**

Plaintiff argues the ALJ erred by failing to give appropriate weight to medical opinions in the record. (ECF No.13, pp.7-10). In particular, plaintiff argues that that the ALJ failed to give appropriate weight to Dr. Feiler's medical opinion, failed to discuss how he arrived at his opinion that Dr. Feiler's opinion(s) were not supported by objective medical findings and ignored some of Dr. Hodge's stated limitations that would have led to a more restrictive RFC. *Id.* The ALJ also erred plaintiff asserts, in failing to adequately discuss level impairment 1.04 – disorders of the spine, despite plaintiff's nerve root compression, a positive straight leg raise and her documented hip impairment. (ECF No. 13, pp15-16). Plaintiff further argues that the ALJ did not appropriately consider her impairments insofar as her obesity may additionally or cumulatively affect them. (ECF No. 13, p.16).

Plaintiff contends that while the ALJ conceded to giving only "some weight" to the opinion of a non-medical "single decision maker" (Ms. Talmadge), that in fact, that is the only opinion with which his opinion is fully compatible. (ECF No. 13, p.10). Plaintiff also complains that the ALJ failed to make any findings about plaintiff's past work and instead erred by merely asked the vocational expert (VE), if given the RFC, plaintiff could perform her past work. (ECF No. 11, p.11). Finally plaintiff contends that given that she is a person of "advanced age" with a limited education, if she were limited to the restricted light work RFC that the ALJ did impose, Grid rule 202.02 would direct a finding of "disabled" unless her skills transferred to easier jobs[1]. (ECF No. 13, p.14).

---

[1] 20 C.F.R. part 404, App.2, Subpart P §202.00(f) states: (f) "For a finding of transferability of skills to light work for persons of advanced age who are closely approaching retirement age (age 60 or older), there must be very little, if any,

Defendant responds summarily that substantial evidence supports the ALJ's determination that plaintiff was not disabled because her RFC would not preclude her performing her past work; that there is insufficient evidence in the record to warrant a finding that plaintiff met a listing under 1.04A; that the ALJ reasonably evaluated Dr. Feiler's opinions; that in considering the record, plaintiff's treatment, her testimony and the consistency of her statements, the ALJ reasonably found her not entirely credible; and because the VE stated that he had considered all of the vocational exhibits in the record, the ALJ reasonably developed the record regarding plaintiff's past work and has substantial evidence supporting his finding that she sustained the ability to perform her past work. (ECF No.15).

1. ALJ's assessment of plaintiff's credibility:

Plaintiff argues that the ALJ provided inadequate reasons for concluding that plaintiff was not entirely credible. (ECF No. 13, pp.17-22; ECF No.18, pp.7-10). Defendant responds that the ALJ properly considered the medical evidence of plaintiff's treatment, daily activities and the consistency with her statements in making a reasonable credibility determination. (ECF No.15, pp.15-18).

Credibility determinations are the particular province of the finder of fact. *Hackett v. Barnhart,* 395 F.3d 1168, 1173(10th Cir. 2005)(citation omitted). They will not be overturned when supported by substantial evidence. *Id.* However, credibility findings should be closely and affirmatively linked to

---

vocational adjustment required in terms of tools, work processes, work settings, or the industry." The agency further states: "Transferability of skills for persons of advanced age. If you are of advanced age (age 55 or older), and you have a severe impairment(s) that limits you to sedentary or light work, we will find that you cannot make an adjustment to other work unless you have skills that you can transfer to other skilled or semiskilled work (or you have recently completed education which provides for direct entry into skilled work) that you can do despite your impairment(s). We will decide if you have transferable skills as follows. If you are of advanced age and you have a severe impairment(s) that limits you to no more than sedentary work, we will find that you have skills that are transferable to skilled or semiskilled sedentary work only if the sedentary work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry. (See § 404.1567(a) and § 201.00(f) of appendix 2.)." If you are of advanced age but have not attained age 60, and you have a severe impairment(s) that limits you to no more than light work, we will apply the rules in paragraphs (d)(1) through (d)(3) of this section to decide if you have skills that are transferable to skilled or semiskilled light work (see§404.1567(b)). If you are closely approaching retirement age (age 60 or older) and you have a severe impairment(s) that limits you to no more than light work, we will find that you have skills that are transferable to skilled or semiskilled light work only if the light work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry. (See §404.1567(b) and Rule 202.00(f) of appendix 2 to this subpart.) 20 C.F.R. §404.1563(e)."

substantial evidence and not just a conclusion in the guise of findings. *Huston v. Bowen,* 838 F.2d 1125, 1133 (10th Cir. 1998).

In this instance the ALJ stated that he based his credibility finding on: (1) Dr. Feiler's recommendation that plaintiff lose weight and exercise as "the best treatment" with which she was noncompliant; (2) Dr. Feiler's "reported severity of limitation [which] is not supported by objective medical findings;" (3) plaintiff's statement to Dr. Hodge that she was at the top of the list for re-start because of her ability to work as well as other workers, his examination results and his report that her pain allegations were not congruent with her affect; (4) plaintiff's overstatement of her vision problems compared to the actual examination findings; (5) plaintiff's claims of frequent falls belied by the record's absence of treatment for such; (6) plaintiff's claims of problems with her neck and vision decreasing her ability to drive and (7) plaintiff collecting unemployment benefits for "almost a year and a half after she alleged she became disabled." (ECF No. 7-2, pp.25-27).

While these statements at first blush appear to confirm and support the ALJ's finding that plaintiff lacks credibility, a careful examination of the record reveals these conclusions are based on some significant oversights or misreading of the record rather than the required substantial evidence. For example, in one misreading/oversight the ALJ stated "[b]ased on the radiographic findings Frederic Feiler, M.D., recommended weight loss and exercise as the best treatment." (ECF No.7-2, p.25). Dr. Feiler did not state exercise and weight loss were "the best treatment" but rather that in January 2010, they were his immediate recommendation based on his physical examination, previous visit, X-rays and the MRI results. (ECF No.7-7, p.277). A year later as a result of additional tests and examination, Dr. Feiler noted that plaintiff's hip had deteriorated markedly and he then recommended her use of a cane and a total hip replacement when she had the means to pay for the surgery. (ECF No.7-8, p.393).

Similarly plaintiff's eyesight was markedly worse than the ALJ's impression of 20/25.  (ECF No. 7-2, p.27).  Plaintiff's yearly examination on September 20, 2010, determined her vision to be 20/70 and 20/40 near vision and 20/200 and 20/100 far vision.  (ECF No. 7-7, p.326).  The ALJ also incompletely stated Dr. Hodges' findings of plaintiff's limitations and somewhat overstated plaintiff's concern that "my balance is off and I can not do stairs or latters [sic] I often fall" and "[m]y balance is off and I'm afraid I will fall" (ECF No.7-6, pp.173, 194), as simply plaintiff stating "that her balance was off and she often fell."  (ECF No.7-2, p.27).

Plaintiff's admitted collection of unemployment benefits during a time when she alleged disability is certainly problematic and no doubt unfavorably colored the ALJ's credibility determination given that there is an obvious inconsistency between claiming an ability to work for purposes of obtaining unemployment benefits and simultaneously claiming an inability to work for purposes of obtaining social security benefits.  When the ALJ questioned plaintiff about this apparent inconsistency at the March 17, 2011 hearing, plaintiff stated that she applied for unemployment because her husband's unemployment benefits were running out and they needed the income but added that she was looking for work within her stated limitations, for "an employer who would understand my physical condition and work with me on that."  (ECF No. 7-2, p.43).

For the above noted reasons, I find that the ALJ's credibility finding is not supported by substantial evidence.  Upon remand, the ALJ should carefully reconsider the record and elucidate substantial evidence from the record to support his finding of lack of credibility.

2.      ALJ's consideration of medical opinions:

 Plaintiff argues that the ALJ erred in failing to give appropriate weight to Drs. Feiler and Hodges' medical opinions.  (ECF No. 13, pp7-10).  Further plaintiff contends that the ALJ failed to explain how e.g., Dr. Feiler's opinions were not those of a treating physician and "supported by

9

objective medical findings" given that Dr. Feiler on four separate occasions saw plaintiff saw and recommended treatment in consultation with Dr. Lopez which were based on plaintiff's MRI, X-ray and his physical examination(s) of plaintiff. (ECF No. 13, pp. 8-9). Similarly, plaintiff notes that while Dr. Hodge gave less restrictive limitations than Dr. Feiler, his opinions were not inconsistent with Dr. Feiler's, based as they were on earlier records that did not include the later imaging which influenced Dr. Feiler's more restrictive opinion. (ECF No.13, pp.9-10). Plaintiff also notes that Dr. Hodges' restrictions are at odds with the ALJ's RFC insofar as the ALJ found plaintiff could bend and therefore occasionally stoop and crouch. *Id.* Finally plaintiff asserts that the ALJ's findings inappropriately relied on the opinion of a lay witness, Ms. Talmadge, rather than those of medical doctors. (ECF No.13, p.10).

Defendant responds that despite examining and recommending treatment for plaintiff multiple times, Dr. Feiler was not a treating physician and therefore the ALJ was not required to give his opinion controlling weight. (ECF No. 15, pp.12-14). Similarly defendant contends the ALJ did not err in not accepting all of Dr. Hodge's limitations when making his RFC assessments because he made them based on the totality of evidence before him rather than any single opinion. (ECF No. 15, pp.14-15).

I find that the ALJ rejected some medical evidence in the record without explanation. It is therefore impossible to know whether the ALJ regarded Dr. Feiler as a treating source as defined by 20 C.F.R. §§ 404.1502, and 414.902. When as here, the ALJ does not weigh the specific evidence, it is impossible to assess whether relevant evidence adequately supports the ALJ's assessment of these doctors' medical opinions regarding plaintiff's limitations. *Clifton v. Chater,* 79 F.3d 1007, 1010 (1996)(the ALJ must discuss the uncontroverted evidence he chooses not to rely upon as well as any significantly probative evidence he rejects). On remand, the ALJ should include the specific reasons for rejecting Drs. Feiler and Hodges' functional limitations, weighing those reasons against the appropriate rules and factors.

### 3. ALJ's finding that plaintiff could perform her past work:

Plaintiff argues that the ALJ erred in failing to make any findings about the exertional requirements of her past work. (ECF No.13, pp.11-15). Plaintiff notes that while she was asked by the VE to recite her job duties, she was not asked about her mold operator job's exertional requirements which she argues, lead to the VE incorrectly categorizing her past work as "light" despite it requiring her to lift 25 pounds frequently. *Id.* Further plaintiff contends that the VE ignored the ALJ's prohibition of no ladders in finding she could perform her past work given that she was required to climb a ladder to feed the hopper and keep the machine running. (ECF No.13, p.13).

Defendant responds that the ALJ and the VE said they had considered all evidence in the record which would have included plaintiff's paperwork describing the duties and functional requirements of her past work. (ECF No.15, pp.18-20). Based on those statements and the plaintiff's responses to the VE's questions, defendant argues the ALJ reasonably developed the record and based his finding that plaintiff could perform her past work on substantial evidence in the record. (ECF No.15, p.20).

Step four of the sequential analysis, at which an ALJ determines whether a plaintiff is disabled, is comprised of three inquiries. *Winfrey v. Chater,* 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ must evaluate a claimant's physical and mental RFC. *Id.* (citing SSR 86–8, Soc. Sec. Rep. Serv., Rulings 1983–1991, 423, 427 (West 1992)). Second, the ALJ must determine the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §404.1520(e). Finally, the ALJ determines whether the claimant has the ability to meet the job demands found in step two despite the mental and/or physical limitations found in the first step. *Winfrey,* 92 F.3d at 1023 (citing *Henrie v. U.S. Dept. of Health & Human Servs.,* 13 F.3d 359, 361 (10th Cir. 1993). The ALJ must make specific findings at each of these inquiries. *Id.*

In this instance, the ALJ did not reconcile the evidence in the record regarding plaintiff's stated and documented limitations with adequate factual information about her work demands as actually and generally performed. Plaintiff is not responsible for developing the record as to the demands of her past relevant work; rather the ALJ has the duty of inquiry and factual development. *Washington v. Shalala,* 37 F.3d 1437, 1442 (ALJ must obtain adequate factual information about those work demands which have a bearing on the medically established limitations). On remand, the ALJ must not only develop the record concerning the demands of plaintiff's past relevant work, but also make findings that compare the physical demands of that work with plaintiff's capabilities, and discuss whether plaintiff as a person of "advanced age" with a limited education, has the necessary skills to transfer to an easier job if limited to the light work his RFC imposed in keeping with the requirements of 20 C.F.R. part 404, App.2, Subpart P §202.00(f).

## IV.   CONCLUSION

For the reasons stated above, the Commissioner's September 5, 2012, final decision is REVERSED and REMANDED for further proceedings in accordance with this order.

IT IS SO ORDERED

DATED this 31st day of August, 2015.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge